UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ESTATE OF DOUGLAS L. MANSHIP, ET AL** | **CIVIL ACTION** |
| **VERSUS** | |
| **UNITED STATES OF AMERICA** | **NO. 04-91-C-M2** |

## RULING AND ORDER

This matter is before the Court on the Motion for Reconsideration/Clarification of the Court's Ruling on the Motion for Protective Order regarding Subpoenas to Forensic and Canessa (R. Doc. 315) and the Motion for Reconsideration/Clarification of the Court's Ruling on the Motion for Leave to Depose Scott Nammacher (R. Doc. 316) filed by plaintiffs, the Estate of Douglas L. Manship, deceased ("the Estate"); David C. Manship; Richard F. Manship; Douglas L. Manship, Jr.; and Dina Manship Planche (collectively "plaintiffs").  Defendant, the United States of America ("United States"), has not filed an opposition to plaintiffs' motions.

## FACTS & PROCEDURAL BACKGROUND

On March 10, 2008, the undersigned issued two rulings in this matter, one relating to the United States' Motion for Protective Order Regarding the Subpoenas Issued to Forensic and Canessa and the other relating to the plaintiffs' Motion for Leave to Depose Scott Nammacher ("Nammacher") (R. Docs. 309 and 310).  Plaintiffs now seek reconsideration and/or clarification of those rulings concerning the scope of the depositions of Canessa and Nammacher in order to have the Court prophylactically "address objections that the plaintiffs expect the United States will lodge" at the depositions.

1

Specifically, in reference to Canessa's deposition, plaintiffs request that the Court order that they are entitled to ask questions related to the following topics:

(1) the extent and breadth of Canessa's personal participation in data gathering and analysis for the principal and rebuttal reports submitted by Dr. Gregg Jarrell ("Jarrell") in this matter;

(2) the extent to which Canessa delegated to others employed by Forensic Economics data gathering and analysis tasks for the principal and rebuttal reports submitted by Jarrell in this matter;

(3) all contact and communications between Canessa and Jarrell relating to the principal and rebuttal reports submitted by Jarrell in this matter;

(4) all site visits to properties owned/operated by the Manship companies;[1]

(5) Canessa's attendance at any deposition in this case as Jarrell's representative or assistant;

(6) Canessa's assignment with respect to compliance with the subpoenas duces tecum served by Plaintiffs on Jarrell in this matter;

(7) Canessa's contacts and communications with third persons for the purposes of giving or receiving information for consideration in connection with the principal and rebuttal reports submitted by Jarrell in this matter, including all contacts and communications with Scott A. Nammacher, Frank Torchio, Howard Mulcahey, Ken Kotz, Sanjay Panseri, Karina Calzadilla and Michael Bedsole or others employed by Forensic Economics, Inc.;

(8) Canessa's role concerning compliance with the subpoenas duces tecum served by Plaintiffs on Jarrell in this matter, including the identification of the

---

[1] The Manship companies are Capital City Press, LLC, Louisiana Television Broadcasting, LLC, and Mobile Video Tapes, LLC.

> > information sources that were searched or examined for documents responsive to the subpoena, when and by whom;
>
> (9) All aspects of the work performed by employees of Forensic Economics with respect to the preparation of and analysis contained within Jarrell's expert reports submitted in this matter; and
>
> (10) All aspects of the work performed by Canessa related to the analysis contained in and the preparation of Jarrell's expert reports submitted in this matter.

*See*, R. Doc. 315.

Relative to Nammacher's deposition, plaintiffs request that the Court order that they are entitled to ask questions related to the following topics: (1) all of the information relating to the valuation issues in this case communicated by any means between Nammacher and Jarrell or any other persons assisting either of them, and (2) the nature, type and extent of the collaboration between Nammacher, Jarrell and any other persons assisting either of them. Finally, plaintiffs request that the Court's Order on its motion for reconsideration/clarification relative to Nammacher's deposition not preclude further discovery warranted by the information elicited during that deposition.

## **LAW & ANALYSIS**

**I.   The United States' Failure to File an Opposition:**

Local Rule 7.5M of the Middle District of Louisiana requires that memoranda in opposition to a motion be filed within twenty (20) days after service of the motion. The rule specifically provides:

> LR7.5M   Response and Memorandum
>
> Each respondent opposing a motion shall file a response, including opposing affidavits, memorandum, and such

> supporting documents as are then available, within 20 days after service of the motion. Memoranda shall contain a concise statement of the reasons in opposition to the motion, and a citation of authorities upon which the respondent relies. For good cause appearing therefor, a respondent may be required to file a response and supporting documents, including memoranda, within such shorter or longer period of time as the court may order, upon written ex parte motion served on all parties.

The present motions were filed on March 25, 2008, and the Court's electronic filing system indicates that notice of the filing of such motions was transmitted electronically to counsel for the United States on that same date at 10:42 a.m. and 10:50 a.m. More than twenty (20) days have elapsed since the service of the motions, and the United States has failed to file an opposition. The motions are therefore deemed unopposed. In addition to the motions being unopposed, the Court finds that the motions have merit, at least in part, and should therefore be granted in part and denied in part, as set forth below.

**II.     Motion for Reconsideration/Clarification of Ruling on Motion for Protective Order regarding Subpoenas to Forensic and Canessa:**

In the undersigned's ruling relating to the United States' Motion for Protective Order Regarding Subpoenas to Forensic and Canessa, it was ordered that the plaintiffs are permitted to take the deposition of Canessa "limited to the topic of the extent of his participation in the drafting and preparation of Jarrell's expert report, including any meetings and correspondence he had with Jarrell related thereto." *See*, R. Doc. 309. Such limited deposition was allowed by the Court because evidence was presented by the plaintiffs demonstrating that there was a "seamless collaboration" between Jarrell and Canessa in the collection and analysis of the data underlying Jarrell's report and in the drafting of the report and its exhibits, and as a result, plaintiffs' counsel is entitled to conduct a deposition

4

of Canessa in order to explore what Canessa did relative to the preparation of Jarrell's original and rebuttal reports and to determine whether Canessa performed those tasks competently. Considering those underlying purposes for Canessa's deposition in his role as an assistant to Jarrell, the Court finds that plaintiffs should be permitted to question Canessa concerning Topic Nos. 1, 2, 3, 5, 7, and 10 because such topics relate directly to Canessa's actions and communications relative to Jarrell's expert reports. The Court also finds that plaintiffs should be permitted to question Canessa concerning Topic No. 4 to the extent such site visits were related to Canessa's role as an assistant to Jarrell in the drafting and preparation of Jarrell's expert reports, and not to his alleged role as a non-testifying expert to the United States.

Although Topic Nos. 6 and 8 do not relate directly to Canessa's role in assisting with the drafting and preparation of Jarrell's report, and instead relate to Canessa's role concerning compliance with the subpoenas duces tecum that plaintiffs served upon Jarrell in this matter, the Court finds that plaintiffs are nevertheless entitled to depose Canessa concerning that topic considering Jarrell's admission during his deposition that Canessa was solely responsible for responding to the subpoenas on his behalf and that Jarrell did not independently verify whether Canessa turned over all the documents requested.[2]

The Court does not find, however, that plaintiffs are entitled to inquire about the broad scope of information sought through Topic No. 9, *i.e.*, questioning concerning all aspects of the work performed by employees of Forensic with respect to the preparation of and analysis contained within Jarrell's expert reports in this matter. As the Court

---

[2] *See*, R. Doc. 309, citing pp. 63-66, 76-77, and 429-434 of Jarrell's deposition.

discussed thoroughly in its March 10, 2008 Ruling, Canessa's deposition is being permitted solely to determine how he, as an assistant to Jarrell, participated in the drafting and preparation of Jarrell's expert reports.  Canessa has not been identified as a testifying expert in this case and, as of now, has not been demonstrated to be a "ghost writer" of Jarrell's expert reports; thus, plaintiffs are not entitled to discover the full scope of information from Canessa that they are entitled to discover from Jarrell.[3]  The request for information in Topic No. 9 appears to be yet another attempt by the plaintiffs to obtain the information they previously sought through a corporate deposition of Forensic.  In the March 10, 2008 Ruling, the Court denied plaintiffs' request for Forensic's corporate deposition on the ground that plaintiffs can ascertain what tasks the other Forensic employees performed based upon the Forensic billing records and through Jarrell's deposition testimony.

The Court maintains its previous position in that regard, in that, if after Canessa's deposition regarding his participation in the drafting and preparation of Jarrell's report, the plaintiffs find they are missing key items of information necessary for them to replicate Jarrell's work and to conduct a thorough cross-examination of Jarrell (for example, if they are unable to obtain from Canessa sufficient information regarding the "Black-Scholes option pricing work" that was used in preparing Jarrell's expert report, and it is demonstrated that such information is necessary to thoroughly cross-examine Jarrell), then

---

[3] If, based upon information obtained during Canessa's deposition, plaintiffs are able to establish that Canessa was indeed a "ghost writer" of Jarrell's expert reports, they would then be entitled to re-depose Canessa on all issues upon which they could depose a testifying expert, including questions concerning work performed by other Forensic employees on the expert reports in this matter.

plaintiffs could seek discovery on that issue from the particular Forensic employee who performed that work, as reflected in the Forensic billing records and Jarrell's deposition testimony.  To allow plaintiffs to question Canessa regarding what each Forensic employee did relative to Jarrell's expert reports would clearly exceed the scope of his deposition as an "assistant" to a testifying expert as allowed by the jurisprudence cited in the undersigned's March 10, 2008 Ruling.  Accordingly, plaintiffs will be permitted to question Canessa on all topics set forth in their present motion, with the exception of Topic No. 9, to the extent such topics directly relate to Canessa's participation in the drafting and preparation of Jarrell's expert reports in this matter.

**III. Motion for Reconsideration/Clarification of Ruling on Motion for Leave to Depose Scott Nammacher:**

In the ruling on plaintiffs' Motion for Leave to Depose Scott Nammacher, it was ordered that plaintiffs are permitted to conduct a limited deposition of Nammacher confined to the topic of the information exchanged between Jarrell and Nammacher during their July 11, 2006 and September 7, 2006 conference calls.  *See*, R. Doc. 310.  The Court found "extraordinary circumstances" existed for such a limited deposition because neither Jarrell nor the United States had been completely forthcoming with evidence regarding when Nammacher and Jarrell communicated and what information was exchanged between them concerning Jarrell's reports, as indicated by Jarrell's contradictory statements concerning Nammacher in his declaration and deposition and by the United States' failure to disclose to the plaintiffs the September 2006 Jarrell invoice reflecting Nammacher's participation in a conference call with Jarrell twelve days before Jarrell produced his rebuttal expert report, despite the fact that such information was requested by the plaintiffs through discovery and the fact that the United States produced Jarrell invoices for the surrounding months of

7

January - August 2006 and October - December 2006.  The Court concluded that, under the circumstances, it appeared that the only means by which the plaintiffs would be able to sufficiently discover what information was provided to Jarrell by Nammacher during the preparation of Jarrell's reports/opinions is through a deposition limited explicitly to that topic.  *See*, R. Doc. 310.

Although the only communications between Jarrell and Nammacher about which the Court has concrete evidence are the two conference calls discussed in its ruling on the motion for leave to take Nammacher's deposition, it is conceivable, given Jarrell's and the United States' reluctance to disclose information regarding communications between Nammacher and Jarrell, that other communications occurred between those individuals, of which the plaintiffs and this Court have no knowledge.  As discussed previously by the Court on several occasions, because Jarrell has been identified by the United States as a testifying expert, plaintiffs are entitled to discover any information that Jarrell "considered" in the preparation of his expert reports, whether or not he ultimately relied upon that information.  *See*, R. Doc. 310, citing Fed. R. Civ. P. 26(a)(2)(A) and (B) and *Estate of Manship v. U.S.,* 236 F.R.D. 291, 295 (M.D. La. 2006).  As such, plaintiffs are entitled to ask Nammacher whether he and Jarrell communicated regarding Jarrell's expert reports on any occasions other than the two conference calls in question.  If any such additional communications exist, plaintiffs may inquire about the substance of the information exchanged between Nammacher and Jarrell as well as when and how such exchange of information occurred.[4]

---

[4] Although plaintiffs seek to question Nammacher concerning "all of the information relating to the valuation issues in this case" communicated between Nammacher and Jarrell," the Court finds that request to be overbroad, as it is not narrowly tailored to relate specifically to Jarrell's expert reports in this matter.

8

Additionally, considering that Jarrell conceded during his deposition that he relied upon his assistants for the data gathering relative to his reports, that the majority of communications with third parties regarding the preparation of his reports, including those with Nammacher, occurred through Canessa, and that another individual employed by Nammacher's company, Empire Valuation, named "Scott" participated in the July 11, 2006 conference call along with Nammacher and Jarrell, it is possible that not all of the information exchanged between Jarrell and Nammacher concerning Jarrell's expert reports occurred through direct communication solely between Jarrell and Nammacher.[5] Accordingly, in order for plaintiffs to discover the full extent of communications between Jarrell and Nammacher relative to Jarrell's reports, plaintiffs should also be permitted to question Nammacher regarding any communications he (or any of his assistants) had with Canessa (or any of Jarrell's other assistants) concerning Jarrell's expert reports.

Finally, as to plaintiffs' request that the Court reconsider/clarify its reasons supporting its ruling that plaintiffs are not entitled to take a "full deposition" of Nammacher because no evidence was presented that the opinions of Nammacher were used by Jarrell as the "basis" for Jarrell's opinions or that there was "substantial collaborative work" between Jarrell and Nammacher in the preparation of Jarrell's report/opinions, the Court declines to reconsider its previous decision and allow a full deposition of Nammacher. In

---

[5] For example, the billing records relative to the conference calls at issue indicate that, on both occasions, Canessa billed several more hours for time spent on the conference call than Jarrell did.  Relative to the July 2006 call, Jarrell billed only 5.00 hours, while Canessa billed 13.25 hours.  As to the September 2006 conference call, Jarrell billed 6.00 hours, and Canessa billed 8.00 hours.  While the discrepancy in the number of hours billed could be explained as Jarrell testified in his deposition (i.e., during the time billed, Canessa must have performed tasks relative to the expert reports other than simply participating in the conference call), plaintiffs are certainly entitled to question Nammacher as to whether he continued to have conversations with Canessa concerning the expert reports after Jarrell disengaged from the conference calls.

the March 10, 2008 Nammacher Ruling, the Court explained that, although Jarrell admitted during his deposition that he considered certain information by Nammacher regarding betas and the use of a "firm-specific risk premium" for purposes of the discounted cash flow analysis, he also indicated that he elected not to follow Nammacher's advice and ultimately adjusted the beta to another number within the range of data he had been using in order to avoid issues being raised about the discount rate similar to the "firm specific" issues raised by Nammacher. The Court also noted that the United States had presented evidence that Jarrell's decision to eliminate any issues regarding the "beta" and the "discount rate" was consistent with his conservative approach in writing expert reports and that he would have done so even if Nammacher had not advised him to do so. *See*, R. Doc. 310, citing pp. 219-21 and 355-57 of Jarrell's deposition. On those grounds, the Court found that Nammacher's input regarding betas was not a "basis" for Jarrell's opinions in his report, and the Court finds no error in its prior reasoning.

The Fifth Circuit Court of Appeals has held that a motion for reconsideration is not the proper vehicle for parties to rehash evidence, legal theories, or arguments that were previously offered or raised before the entry of judgment. *Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004); *Westbrook v. C.I.R.*, 68 F.3d 868, 879 (5th Cir. 1995). Rather, such a motion is to serve the "narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence" and is an "extraordinary remedy that should be used sparingly." *Templet*, at 479, quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989).[6]  In their present motion for

---

[6] *See also, LeClerc v. Webb*, 419 F.3d 405 (5th Cir. 2005), quoting *Templet,* at 479; *Clancy v. Employers Health Ins. Co.*, 101 F.Supp.2d 463, 465 (E.D. La. 2000)(citing 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2810.1, at 124 (2d ed. 1995)).

reconsideration relative to Nammacher's deposition, plaintiffs simply rehash the same arguments and evidence on this issue that they presented in their original motion; furthermore, they have not demonstrated any manifest error of law or fact in the Court's previous decision denying them a full deposition of Nammacher. Accordingly, to the extent their present motion seeks a deposition of Nammacher beyond the specific topics permitted above, their motion will be denied.

Accordingly;

**IT IS ORDERED** that the Motion for Reconsideration/Clarification of the Court's Ruling on the Motion for Protective Order regarding Subpoenas to Forensic and Canessa (R. Doc. 315) and the Motion for Reconsideration/Clarification of the Court's Ruling on the Motion for Leave to Depose Scott Nammacher (R. Doc. 316) filed by plaintiffs are hereby **GRANTED IN PART** and **DENIED IN PART** as set forth above.

**IT IS FURTHER ORDERED** that, during the deposition of James Canessa, plaintiffs will be permitted to question him concerning all of the topics listed in their Motion for Reconsideration/Clarification of the Court's Ruling on the Motion for Protective Order regarding Subpoenas to Forensic and Canessa, except for Topic No. 9, to the extent such topics directly relate to Canessa's participation in the drafting and preparation of Gregg Jarrell's expert reports and his participation in complying with the subpoenas duces tecum served upon Dr. Gregg Jarrell by the plaintiffs.

**IT IS FURTHER ORDERED** that, during the deposition of Scott Nammacher, plaintiffs will be permitted to question him concerning the following topics: (1) regarding the information exchanged between Jarrell and Nammacher during the July 11, 2006 and September 7, 2006 conference calls (as permitted by the Court's March 10, 2008 Order,

11

R. Doc. 310); (2) concerning whether Jarrell and Nammacher communicated about Jarrell's expert reports on any occasions other than the two conference calls in question (and, if so, regarding the substance of those communications and when and how such communications occurred); and (3) concerning any communications Nammacher (or any of his assistants) had with James Canessa (or any of Jarrell's other assistants) about Jarrell's expert reports in this matter.

    Signed in chambers in Baton Rouge, Louisiana, April 16, 2008.

**MAGISTRATE JUDGE CHRISTINE NOLAND**